[Cite as *State v. Kornilov*, 2012-Ohio-6218.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**PORTAGE COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-P-0029** |
| EUGENE KORNILOV, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Municipal Court/Ravenna Division, Case No. 11 CRB 2746R.

Judgment: Affirmed.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*William G. Simon, Jr.,* Sicuro & Simon, 213 South Chestnut Street, Ravenna, OH 44266 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Eugene Kornilov, appeals his conviction in the Portage County Municipal Court, Ravenna Division, following a bench trial, of resisting arrest. At issue is whether appellant's conviction was supported by sufficient evidence. For the reasons that follow, we affirm.

{¶2} On October 17, 2011, appellant was charged by criminal complaint with resisting arrest, in violation of R.C. 2921.33(A), a misdemeanor of the second degree

("the criminal case"). He was also charged in a separate case by citation with parking opposite the direction of travel, in violation of R.C. 4511.69(C), and parking on a roadway obstructing traffic, in violation of R.C. 4511.66, both minor misdemeanors ("the traffic case"). Appellant pled not guilty and the two cases were tried together to the court.

{¶3} Before outlining the facts of this case, we note that appellant does not make even one reference to the record in support of his statement of the facts, in violation of App.R. 16(A)(6). Moreover, his statement of facts does not correctly reflect the testimony of the witnesses. For this reason alone, the appeal lacks merit. However, although the appeal is procedurally flawed, in the interest of justice, we address the merits.

{¶4} Officer Sandra Prokop of the Mantua Village Police Department testified that on Saturday evening, October 15, 2011, at about 7:00 p.m., she responded to a resident's complaint of a truck blocking several driveways and parking on the road in the wrong direction on Elm Street, which is located in a residential district in the village.

{¶5} Upon Officer Prokop's arrival, she saw a large truck with an attached auto hauling trailer parked in the northbound lane of Elm Street facing southbound. The truck was completely blocking the northbound lane and partially blocking the southbound lane. The truck was also blocking three driveways on Elm Street.

{¶6} Officer Prokop parked her cruiser behind the truck and activated her overhead lights. As she was parking, appellant stepped out of the truck and walked over to her cruiser. While she was still in her vehicle, Officer Prokop asked appellant if the truck was his. He said it was. He said he was there waiting for a friend to repair the

2

lights on the trailer. He denied driving the truck and said that someone else had driven it to that location. Officer Prokop saw that no one else was in the area. When she asked appellant where this other driver was, appellant said he had left. The officer then asked appellant for the name of the alleged driver, but appellant refused to give it to her. At her request, appellant provided his driver's license and proof of insurance.

{¶7} While Officer Prokop was still in her cruiser and appellant was standing outside her vehicle, she prepared citations for him for parking opposite the direction of travel and parking on the roadway obstructing traffic. Officer Prokop then left her cruiser and took the citations to appellant. She told him she was citing him for the parking violations and that he needed to sign them. She said his signature was not an admission of guilt, but necessary simply to verify that he had received the citations and to notify him of the court date she wrote on them.

{¶8} However, appellant refused to sign the citations and insisted he did not do anything wrong. Officer Prokop testified appellant was angry and anxious. She said he was moving around and kept putting his hands in and out of his pockets. As a result, she was concerned that appellant might be carrying a weapon.

{¶9} Officer Prokop told appellant that if he did not sign the citations, she could arrest him and take him to jail. Despite this admonition, appellant continued to refuse to sign them.

{¶10} Officer Prokop testified that appellant became irate with her and said, "This is f_ _ _ ing b_ _ _s _ _ _. I'm not accepting this ticket. You shouldn't be doing this." Officer Prokop told appellant she was going to arrest him and take him to jail. She told him to place his hands on the hood of her car so she could pat him down for

3

weapons. Appellant briefly put his hands on the cruiser, but then took them off. Officer Prokop put one hand on appellant's arm and with the other patted him down on his outer pockets. Appellant pulled away. The officer grabbed appellant's arm and tried to pull him toward her cruiser. Again, she told him to put his hands on her cruiser. Instead, he kept pulling his arm away from her and started to walk away. She told him several times to place his hands behind his back because he was under arrest, but he refused to comply. She held onto appellant's arm as he backed away from her. She said she had difficulty keeping her grip on him because he kept pulling away from her. She said she finally lost her grip on him and then grabbed the sleeve of his jacket.

{¶11} While holding onto appellant's sleeve, but unable to arrest him on her own, Officer Procop radioed for backup. She said that with the difference in their heights, she being five foot, three inches and he being more than six foot tall, she was concerned that if appellant engaged her in a scuffle, she might be injured.

{¶12} While Officer Prokop was holding onto appellant, a male pulled up behind her cruiser. He said the truck was blocking his driveway and asked if it could be moved. Officer Prokop testified she declined because at the time she was trying to hold onto appellant.

{¶13} About five minutes after Officer Prokop called for assistance, an officer from the Hiram Police Department arrived to provide backup. The Hiram officer told appellant to follow Officer Prokop's instructions and to put his hands on her cruiser. This time appellant complied. The officers then patted him down and placed him in the back of Officer Prokop's cruiser.

4

{¶14} Officer Prokop requested a tow to remove the truck from the road. Once the tow arrived, she drove appellant to the Portage County Jail. When Officer Prokop opened the door to her cruiser and appellant stepped out, he said, "I'm going to kick your ass you f_ _ _ ing dike." She then walked him to the jail where he was booked. After appellant was put in jail, Officer Prokop tried to get appellant to sign the citations, but he still refused to do so.

{¶15} For the defense, appellant testified that he operates an auto transport business and that he owns the tractor-trailer. He said that on the day in question, he and another male drove appellant's truck to the home of a male named Kurt for him to repair the trailer's lights. He said that after the male who drove the truck parked it on the street, he left, and appellant waited for Kurt to arrive. Appellant did not give the alleged driver's name or say how or why he left the area. Appellant said that about ten minutes after the alleged driver left, Officer Prokop arrived.

{¶16} Appellant testified he refused to sign the citations because he did not drive the truck to that location and also because the truck was not owned personally by him, but rather, by a company of which he is the sole owner. On appeal appellant concedes he owns the truck.

{¶17} Appellant testified that Officer Prokop never told him he was under arrest. He said he "was confused what she was doing because she's a police officer. She's a woman and she's being aggressive toward me." He said that if she had told him he was under arrest, he would have complied with her instructions.

{¶18} On cross-examination, appellant admitted that he refused to give Officer Prokop the name of the person who he alleged had driven his truck. He also admitted

5

that the truck could have been parked off the road in Kurt's driveway. Further, appellant admitted that Officer Prokop told him if he did not sign the citations, he could be arrested. He admitted he understood if he did not sign the citations, he was going to jail. He also admitted that when Officer Prokop told him to put his hands on her cruiser, he felt he was not free to leave and that when she held onto his arm and his sleeve, she was showing her authority.

{¶19} Kurt Teeter testified he performs auto repair work in the driveway of his residence on Elm Street. He has performed repair work on appellant's truck for about one year. On October 15, 2011, appellant called him and said he was having problems with the lights on his trailer and that "*he* was going to bring the * * * truck and trailer over for me to repair" it sometime that day. (Emphasis added.) Mr. Teeter said that in the evening he went to a store and that on his return, he saw appellant's tractor-trailer parked in front of his driveway in the street and a police officer nearby. Mr. Teeter said that when he was 12 feet from the officer, he rolled down his window and yelled to her asking if someone could move appellant's truck because it was blocking his driveway. Officer Prokop denied the request and told him to find someplace else to park. Mr. Teeter said the officer was holding appellant's arm while appellant's hands were in his pockets. Mr. Teeter testified he heard the officer tell appellant to put his hands behind his back. Contrary to appellant's testimony, Mr. Teeter testified that the officer told appellant he was "being placed under arrest."

{¶20} The trial court found appellant guilty of resisting arrest in the criminal case and of both parking offenses in the traffic case. In the criminal case, the court sentenced appellant to 30 days in jail, all time to be suspended on condition of him

committing no violations of the law for one year, and a fine of $200. In the traffic case, the court sentenced appellant to a fine of $250, with the sentence to be merged for both parking offenses. The court stayed execution of the sentences pending appeal.

{¶21} Appellant appeals his conviction of resisting arrest only, asserting the following for his sole assignment of error:

{¶22} "The trial court's conviction is against the manifest weight of the evidence insofar as the evidence was insufficient to convict the defendant appellant of resisting arrest."

{¶23} Appellant's assignment of error states his conviction was against the manifest weight of the evidence because the evidence was insufficient to convict him of resisting arrest. In thus framing his assignment of error, he conflates these two issues, which are separate and distinct. In any event, because appellant's argument is limited to the sufficiency of the evidence, we confine our analysis to that issue.

{¶24} A challenge to the sufficiency of the evidence invokes an inquiry into due process and examines whether the state introduced adequate evidence to support the verdict as a matter of law. *State v. Schlee*, 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, *13 (Dec. 23, 1994). Generally speaking, a "sufficiency" argument raises a question of law as to whether the prosecution offered some evidence concerning each element of the charged offense. *State v. Windle*, 11th Dist. No. 2010-L-0033, 2011-Ohio-4171, ¶25. The proper inquiry is, after viewing the evidence most favorably to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Troisi*, 179 Ohio App.3d 326, 2008-Ohio-6062, ¶9 (11th Dist.), citing *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

7

**{¶25}** The complaint charged appellant with resisting arrest, in violation of R.C. 2921.33(A), which provides: "No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person * * *." A violation of this section is a misdemeanor of the second degree. R.C. 2921.33(D).

**{¶26}** Thus, resisting arrest may be committed recklessly or by force. "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

**{¶27}** "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person * * *." R.C. 2901.01(A)(1).

**{¶28}** The resisting arrest statute does not define "resist" or "interfere." However, the Legislative Service Commission Comment accompanying the statute provides: "The offense may be committed through the use of force, or recklessly by any means * * *. The Ohio Jury Instructions provide the following definition: "'Resist or interfere' means to oppose, obstruct, hinder, impede, interrupt, or prevent an arrest by a law enforcement officer by the use of force or recklessly by any means, such as going limp, or any other passive or indirect conduct." 4 Ohio Jury Instructions, Section 521.33(4).

**{¶29}** On appeal appellant denies parking the truck. However, the state presented evidence that appellant, rather than some unidentified person, parked the truck. Upon Officer Prokop's arrival, she saw him step out of the truck. Officer Prokop said appellant told her the truck was his. Although he said someone else was the driver, no one else was present and appellant refused to provide that person's name. Even at trial, appellant did not provide the alleged driver's name or any explanation as

8

to why or how that person left the scene. Tellingly, Mr. Teeter testified that appellant called him earlier that day and said that "*he* was going to bring the * * * truck and trailer over for me to repair." (Emphasis added.)

{¶30} With respect to the elements of resisting arrest, appellant does not dispute that Officer Prokop lawfully arrested him. In fact, he concedes that if he resisted Officer Prokop's arrest, he would have been guilty of resisting arrest.

{¶31} The only argument appellant asserts is that there was no evidence of force and thus no evidence he resisted his arrest. However, the state presented evidence regarding this element of the offense. First, the state presented evidence that Officer Prokop was attempting to arrest appellant. After he refused to sign the citations, Officer Prokop told him she was going to arrest him and to place his hands on her car so she could pat him down. After appellant refused to comply, she grabbed onto his arm and patted him down. She tried to pull him toward her cruiser, but he pulled away. She told him several times to put his hands behind his back because he was under arrest. After he pulled away from her, she grabbed his sleeve and held him for five minutes until backup arrived. After the backup officer told appellant to follow Officer Prokop's instructions, she effectuated his arrest. Although appellant testified Officer Prokop never told him he was under arrest, he admitted she told him if he did not sign the citations, he could be arrested. He also admitted he understood that if he did not sign the citations, he was going to jail. Further, he admitted he was not free to leave. Finally, Mr. Teeter testified he heard Officer Prokop tell appellant he was "being placed under arrest."

{¶32} Further, the state presented evidence that appellant recklessly or by force resisted his arrest. After Officer Prokop told appellant to place his hands on her cruiser, he pulled way. After she grabbed his arm trying to pull him toward her cruiser, he kept pulling his arm away from her and started to walk away. She held onto his arm as he backed away from her. She had difficulty keeping her grip on him because he kept pulling away. She finally lost her grip on him and then grabbed onto his jacket sleeve in order to hold him.

{¶33} We note that neither party has referenced any pertinent authority regarding whether a defendant's act of pulling away from an officer while the officer is attempting to arrest him is sufficient to support a conviction for resisting arrest. However, our independent research has disclosed such authority. In *Fairborn v. Blanton*, 2d Dist. No. 94-CA-103, 1995 Ohio App. LEXIS 2757 (June 28, 1995), the defendant would not submit to his arrest and tried to pull away from the officer. The Second District held the defendant's act of pulling away from the officer who was attempting to arrest him was sufficient to support a conviction for resisting arrest. *Id.* at *12. In support of its holding, the appellate court noted that merely "going limp" when a police officer attempts to arrest a defendant has been held to constitute resisting arrest. *Id.* Further, the Second District stated that a defendant's avoidance of apprehension constitutes resisting arrest. *Id.* Thus, the Second District held that sufficient evidence was presented from which the trial court could find that the defendant, either recklessly or by force, resisted or interfered with his arrest. *Id.* at *13.

{¶34} Based on our review of the record, we hold there was sufficient, credible evidence in the record from which the trial court could find, as it did, that appellant, either recklessly or by force, resisted arrest.

{¶35} For the reasons stated in this opinion, appellant's assignment of error is overruled. It is the judgment and order of this court that the judgment of the Portage County Municipal Court, Ravenna Division, is affirmed.

TIMOTHY P. CANNON, P.J.,

THOMAS R. WRIGHT, J.,

concur.