[Cite as *Morrison v. Walters*, 2022-Ohio-1740.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| LISA A. MORRISON, | : | APPEAL NO. C-210398 |
| | | TRIAL NO. DR-2000523 |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| FRANK S. WALTERS, | : | |
| Defendant-Appellant. | : | |

Appeal From: Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 25, 2022

*Zachary D. Smith, LLC,* and *Zachary D. Smith*, for Plaintiff-Appellee,

*Cornetet, Meyer, Rush & Stapleton* and *Karen P. Meyer,* for Defendant-Appellant.

**BERGERON, Judge.**

**{¶1}** After nearly a quarter-century of marriage, the parties here decided to part ways. The trial court accordingly sorted through their finances and assets, issued a divorce decree, and exercised its discretion to allocate assets and liabilities. Unsatisfied with this result, defendant-appellant Frank Walters appeals the judgment, maintaining that the trial court erred in its findings regarding spousal support and financial misconduct, and that it inequitably divided marital assets. On the record at hand, however, we find that the trial court properly exercised its discretion, and we accordingly affirm its judgment.

I.

**{¶2}** Mr. Walters and plaintiff-appellee Lisa Morrison came to the domestic relations court seeking a divorce after nearly 25 years of marriage. Throughout their marriage, the parties accumulated a number of real estate properties, automobiles, and financial assets. The magistrate sifted through the evidence at two hearings before setting forth detailed findings of fact and conclusions of law resolving the issues and divvying up the assets. Mr. Walters timely objected to four of the findings. In short, Mr. Walters contended that he should have been granted spousal support in light of the parties differing earning abilities; that Ms. Morrison committed financial misconduct by gambling and making interest-only payments on a home equity line of credit; that a brokerage account was divided inequitably; and that Ms. Morrison should not be removed from the parties' limited liability holding company until all the rental properties are sold. After the trial court overruled these objections and entered a final decree of divorce, Mr. Walters now marshals those same objections before this court.

2

II.

A.

{¶3}   In his first assignment of error, Mr. Walters challenges the trial court's determination that the parties possess similar earning potential and its concomitant denial of spousal support.  "A trial court has broad discretion in determining whether an award of spousal support is appropriate and the proper amount of the award.  * * * A decision regarding spousal support will not be reversed on appeal absent an abuse of discretion." *Reese v. Reese*, 2019-Ohio-2810, 139 N.E.3d 1288, ¶ 11 (1st Dist.).  Mr. Walters urges us to find an abuse of discretion in the trial court's conclusion that he could find gainful employment in light of uncertainty as to how much he could earn.  On appeal, we will not reverse unless the court exercised its discretionary judgment over the determination of spousal support in an unwarranted way or committed legal error. *See Johnson v. Abdullah*, Slip Opinion No. 2021-Ohio-3304, ¶ 35.

{¶4}   At a hearing on the property division, Mr. Walters testified that he worked in information technology at Proctor and Gamble for most of his adult life before accepting a voluntary early retirement package in June 2015 (at approximately 50 years of age).  After retirement, Mr. Walters supported himself with income from the couple's rental properties and by drawing money from his investment accounts.  Mr. Walters' income for the three years directly preceding retirement averaged $127,000 per year; after retirement, his income dropped to approximately $35,000 per year.  The parties agreed to sell the rental properties as part of the divorce, thus depriving Mr. Walters of any income from managing the properties going forward.

{¶5}   Ms. Morrison, on the other hand, testified that she declined to retire completely from her nursing occupation alongside Mr. Walters in 2015.  Instead, she

transitioned to an independent healthcare consulting role with the goal of contracting for three-to-six month assignments and taking the rest of the year off. Over the last three years, Ms. Morrison earned an average of $144,000 per year in this capacity. Against that backdrop, Mr. Walters complains that the record does not substantiate his ability to earn income comparable to the "substantial income" of Ms. Morrison.

{¶6} While a considerable difference exists in the current incomes of the parties, "the burden of establishing the need for spousal support rests with the party that is seeking such support." *Banchefsky v. Banchefsky*, 10th Dist. Franklin No. 13AP-300, 2014-Ohio-899, ¶ 28. Prior to his retirement, Mr. Walters earned income comparable to what Ms. Morrison now makes. In addition to his IT skills, he has cultivated new skills in property management during his retirement. To counter his earning potential, Mr. Walters offers little more than speculation. He surmises that because he has done nothing since retirement to maintain his computer skills from Proctor and Gamble, his skills are six years out of date, which would make it difficult to find employment. He guesses that due to a back surgery in 2015, he likely would not be able to stand or sit for long periods of time—despite the lack of any doctor's restrictions from obtaining employment. And even though he managed his own rental properties for a number of years, he assumes that no company would hire him as a property manager. These conclusory statements fail to convince us that Mr. Walters does not have viable, marketable skills that could generate substantial income if he so desired.

{¶7} In any event, while Mr. Walters narrows in on the court's finding of similar earning potential, courts must consider a variety of factors in an award of spousal support. R.C. 3105.18(C)(1) "sets forth the factors that the trial court must

4

consider in making a spousal-support determination, including, but not limited to, the parties' income, earning abilities, ages and conditions, retirement benefits, duration of the marriage, marital standard of living, and assets and liabilities." *Sherman v. Sherman*, 1st Dist. Hamilton No. C-120691, 2013-Ohio-3501, ¶ 15. In deciding against an award of spousal support, the trial court explained that it considered testimony from both parties regarding the various factors before reaching its conclusion to deny spousal support in this case. The record supports that analysis and subsequent finding. The trial court accounted for Mr. Walters' pension from Proctor and Gamble (which includes healthcare for life at a nominal price), his separate retirement account, the mortgage-free Colorado Springs home he received, his multiple paid-off vehicles, and the equity he will receive once the rental properties are sold.

{¶8} Given this settlement, Mr. Walters left the marriage with no debt, ample financial resources, and assets and skills substantial enough to provide a standard of living comparable to the one he enjoyed during the marriage. "[E]ach party has the burden of producing evidence as to any of the R.C. 3105.18(C)(1) factors it wants considered, and must provide facts tending to prove its version of the manner in which such factors should be applied." *Hunley v. Hunley*, 12th Dist. Clermont No. CA2019-12-101, 2020-Ohio-5053, ¶ 27. Determinations of earning ability are not limited to current income, "but may also hold a person accountable for the amount of money the person could have earned if he or she had made the effort." *Schenck v. Schenck*, 12th Dist. Butler No. CA2012-08-150, 2013-Ohio-991, ¶ 17. Mr. Walters made a conscious decision to avoid seeking employment, testifying that "I've not chose to go back to work after being retired." He cannot now complain if the R.C. 3105.18(C)(1) factor regarding earning ability did not come out quite the way that he wanted, particularly

5

when he failed to substantiate his position with adequate evidence. *See Rees v. Rees*, 3d Dist. Logan No. 8-11-17, 2012-Ohio-2129, ¶ 11. Accordingly, the trial court did not abuse its discretion in denying Mr. Walters spousal support and we overrule his first assignment of error.

B.

{¶9} In his second assignment of error, Mr. Walters asserts that the trial court abused its discretion by not finding that Ms. Morrison's gambling and interest-only loan payments constituted financial misconduct, and by failing to factor that misconduct into the overall financial calculus. Generally, the division of marital property shall be equal. R.C. 3105.171(C)(1) ("Except as provided in this division or division (E) of this section, the division of marital property shall be equal."). However, R.C. 3105.171(E)(4) authorizes a trial court to fashion a distributive or greater award of marital property to one spouse upon a finding that the other spouse "has engaged in financial misconduct, including but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets." Similarly, R.C. 3105.171(E)(5) provides for compensation to the offended spouse "[i]f a spouse has substantially and willfully failed to disclose marital property, separate property, or other assets, debts, income, or expenses."

{¶10} Contrary to Mr. Walters' characterization on appeal, he presented no evidence that Ms. Morrison engaged in any deceitful conduct to conceal her gambling. Quite the contrary, Mr. Walters admitted that he accompanied her on sundry gambling trips to Las Vegas during the marriage. During these excursions, Ms. Morrison remained at the hotel casino all morning and afternoon to gamble while he enjoyed other activities outside of the hotel. When Mr. Walters returned to the hotel,

6

he would collect Ms. Morrison from the casino for dinner so they could spend the evening together before rising and repeating the next day. Mr. Walters might not have known the exact amount of chips that Ms. Morrison played at the blackjack table (due to their maintaining separate finances during the entirety of their marriage), but it cannot be seriously alleged that she hid her gambling habits.

{¶11} Moreover, the case law cited by Mr. Walters in his appellate brief does not support his stance on appeal. He relies on *Putnam v. Putnam*, 12th Dist. Clermont No. CA2008-03-029, 2009-Ohio-97, to bolster his assertion of financial misconduct. In *Putnam*, the Twelfth District affirmed a finding of misconduct where the ex-wife concealed the extent of her gambling losses by withdrawing funds from her own 401(k) plan, cashing checks from a home equity line of credit, and failing to disclose her gambling receipts to the IRS. The ex-wife's gambling was a source of contention during the marriage in *Putnam*, and the husband had no knowledge of the gambling receipts or 401(k) withdrawals until the IRS conducted an audit and forced the Putnams to file an amended tax return. *See Putnam* at ¶ 16. "Substantial, undisputed evidence was introduced at trial demonstrating that [Ms. Putnam] continually engaged in deceptive practices regarding her gambling." *Id*. The same cannot be said here.

{¶12} Mr. Walters accused Ms. Morrison of shredding her bank statements before he could review them, but nothing in the record supports that allegation. And unlike the *Putnam* case, the gambling wins and losses by Ms. Morrison were properly recorded on the couple's jointly-filed tax returns. Ms. Morrison was not incurring or hiding other outstanding debts, she never withdrew money from the parties' retirement funds, and the evidence does not suggest that the gambling was a source of

friction in the marriage. "Financial misconduct occurs when one spouse engages in some type of knowing wrongdoing, by which the spouse either profits or intentionally interferes with the other spouse's property rights." *Chawla v. Chawla*, 10th Dist. Franklin No. 13AP-399, 2014-Ohio-1188, ¶ 35. Because Mr. Walters failed to demonstrate deception or wrongdoing (or, frankly, even the actual net amount of aggregate gains or losses), the trial court did not abuse its discretion by declining to find financial misconduct due to Ms. Morrison's gambling.

{¶13} The same result holds true for the home equity line of credit jointly taken out against the marital home, and Ms. Morrison's decision to pay interest only on the loan. Mr. Walters testified that he never inquired about the status of the loan because "[t]hat was Lisa's responsibility to manage that." Mr. Walters may personally consider her chosen repayment method to be financial misconduct, but neither party disputed that the loan contained an interest-only payment as an option and Mr. Walters cited to no authority finding wrongdoing based on spousal disagreement of loan repayment strategies. Mr. Walters delegated the responsibility of paying the loan to Ms. Morrison, which she did in accordance with the terms presumably allowed by the bank. The trial court did not abuse its discretion by refusing to find financial misconduct on the part of Ms. Morrison regarding the home equity line of credit, and we accordingly overrule Mr. Walters' second assignment of error.

C.

{¶14} In his third assignment of error, Mr. Walters suggests that the trial court erred by dividing a joint brokerage account before he could use the funds to pay his attorney fees, medical expenses, and appraisal costs for the parties' marital properties. As explained above, the trial court should generally divide the marital property equally

unless statutory reasons suggest otherwise. Mr. Walters asserted that because he had substantially less income than Ms. Morrison, he was forced to withdraw assets from this marital account to pay his ordinary and necessary living expenses. This argument flounders for various reasons, the first being that he failed to support his appellate argument by pointing us to specific portions of the record and legal citations to relevant authority. *See* App.R. 16(A)(7); *see also Ayer v. Morenz-Harbinger*, 1st Dist. Hamilton Nos. C-190687 and C-190716, 2020-Ohio-6861, ¶ 25. This court cannot discern whether a decision stands contrary to law unless the party making such a claim informs us of which law the trial court allegedly ran afoul of, and Mr. Walters neglected to provide the roadmap necessary for meaningful appellate review.

{¶15} Even if we considered the merits of this argument, Mr. Walters' brief fails to acknowledge separate property interests of over a half million dollars that reverted to him before the division of the marital assets. His protestation that the trial court "forced" him to pay his attorney fees out of a marital brokerage account because he lacked other funds strains credulity. The trial court did not abuse its discretion by declining to impose upon Ms. Morrison all of her attorney fees plus half of Mr. Walters', and we accordingly overrule the third assignment of error.

{¶16} In his final assignment of error, Mr. Walters argues that the trial court abused its discretion by ordering him to remove Ms. Morrison's name from BMLL, LLC, a marital asset used by the parties as the holding company for their rental properties. Mr. Walters seemingly believes that removing her name from the business leaves him solely responsible for liabilities incurred until the sale of the properties, and leaves Ms. Morrison with all of the proceeds but none of the costs. Here again, Mr. Walters developed no legal argument in this assignment of error. *See* App.R.

16(A)(7). He merely puts forth three sentences concluding that removing Ms. Morrison's name from the LLC will insulate her from lawsuits and obligations while granting her full proceeds. But the trial court's divorce decree provides that any costs from selling the properties are to be deducted before proceeds are paid, and that both parties are responsible for emergency repairs until the properties are sold. We are unclear what legal inequity Mr. Walters posits and certainly none is apparent from our review of the record.

*         *         *

{¶17} In light of the foregoing analysis, we overrule all four of Mr. Walters' assignments of error and affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P. J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.