[Cite as *Carter v. Carter*, 2024-Ohio-1046.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| TIMOTHY CARTER, | : | APPEAL NO. C-230322 |
| | | TRIAL NO. DR-2000986 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| SHIRDETTE CARTER, | : | |
| | | |
| Defendant-Appellant. | : | |

Appeal From: Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: March 22, 2024

*Patricia A. Baas*, for Plaintiff-Appellee,

*Trolinger Law Offices, LLC*, and *Christopher L. Trolinger*, for Defendant-Appellant.

**CROUSE, Judge.**

**{¶1}** Defendant-appellant Shirdette Carter appeals from the domestic relations court's judgment in her divorce case against plaintiff-appellee Timothy Carter. Shirdette raises six assignments of error relating to distinct aspects of the court's decisions allocating the couple's property and debts, spousal support, and timeline for compliance with the court's order. For the following reasons, we affirm the judgment of the domestic relations court in part, we reverse it in part, and we remand the cause to the domestic relations court for further proceedings.

**{¶2}** Timothy filed for divorce from Shirdette in July 2020. At the time of filing, the couple had one minor child together, who has since turned 18. The parties stipulated to certain matters, and the disputed matters were tried to a magistrate on April 7, May 31, and July 25, 2022. The magistrate issued a decision in October 2022, and Timothy timely filed objections. The trial court heard the objections in January 2023. The trial court issued its decision on the objections in February and issued the divorce decree on May 26, 2023. This appeal timely followed.

## I. First Assignment of Error

**{¶3}** Shirdette argues that the trial court abused its discretion by sustaining Timothy's objection to the admission of certain, disputed credit card bills that Shirdette had not disclosed prior to the start of trial. The bills are from Navy Federal Credit Union, Capital One, PayPal, and Discover. The existence of these bills was not disclosed until after the start of the trial. On the second day of trial, Shirdette proffered additional exhibits that had not been included in the exhibit book on the first day of trial. Although many of the new exhibits were added with new exhibit designations, some were added as additional pages to existing exhibits. The August 2020 statement

from each of the disputed credit card bills was added as an additional page to Exhibit P.[1] Because of the late discovery, the magistrate included in the scheduling order for the continuation of the trial that:

> Ms. Carter shall turn over to Mr. Carter 24 months of statements previous to August 2020 from the following consumer debt accounts: Navy Federal Credit Union, PayPal, Discover Card and Capital One. Mr. Carter shall do the same (24 months) from any as yet [un]disclosed consumer debt account to Ms. Carter. Both parties shall complete this exchange of information no later than July 15, 2022.

{¶4} When trial resumed on July 25, 2022, Shirdette still had not made the required disclosures. Consequently, when Shirdette referred to these credit card bills contained within Exhibit P in her testimony, Timothy raised an objection and also made an "oral motion in limine" to exclude any reference to the disputed credit card bills because the bills had not been disclosed pretrial nor in response to the scheduling order.[2] The magistrate presiding over the trial overruled Timothy's objections and "oral motion in limine."

{¶5} After all witnesses had testified and the magistrate was reviewing the list of exhibits with counsel, Exhibit P was specifically mentioned as being "identified." Then the magistrate verified with counsel:

> The Court: I have – let's just go back through these then.

---

[1] Exhibit P included all of the debts Shirdette presented to the court, including several that were not included in Timothy's objection.

[2] At trial, counsel and the magistrate referred to the objection as an "oral motion in limine." Typically, a "motion in limine" is "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial." *Black's Law Dictionary* 1038 (8th Ed.2004). Here, the objection was not raised pretrial, but during trial. As a result, we consider the "oral motion in limine" to be an objection that was made during the trial to the admission of the previously-undisclosed credit card debt evidence.

Counsel for Shirdette: Um-hum.

The Court: So I have identified A and B.

Counsel for Shirdette: Um-hum.

The Court: D through I, L, P.

Counsel for Shirdette: Um-hum.

The Court: R, S, and W through Z.

Counsel for Shirdette: Um-hum.

The Court: Any objection to those?

Counsel for Timothy: No.

The Court: All right. Those will be admitted.

{¶6} The magistrate ordered that the previously-undisclosed credit card debt be divided equally. Timothy filed the following objection to the magistrate's decision:

Husband objects to the inclusion of the Navy Federal Credit Union ($24,082.99); Capital One card ending 6474 ($2,366.24); PayPal Credit ($2,687.64); and Discover Card ending 3094 ($3,808.12) as marital debt to be divided equally. Husband filed a Motion in Limine to exclude these debts as Wife did not disclose them to Husband until shortly before the second day of trial. During almost two years of litigation, Wife never disclosed the identity of these creditors. Given Wife's documented mismanagement of money it is credible to believe these debts were not disclosed to Husband during the marriage. He was never afforded an opportunity to address the needless accumulation of the debt and attempt to mitigate the matter. It is inequitable to force Husband to now bear half of this debt.

4

{¶7}   The trial court found in favor of Timothy. In its entry on the objections, the trial court stated:

The Magistrate ordered the parties to divide evenly the total marital credit card debt of $60,200.07. The Magistrate found that $32,944.79 of this debt "was never disclosed by Ms. Carter in any discovery response of as part of the administrative disclosure." The Magistrate acknowledged that Mr. Carter had filed a Motion in Limine to exclude this debt once it was revealed. The record reflects that Mr. Carter had to file numerous subpoenas to get the information on this debt from various credit card companies.

Ms. Carter ignored the Court's Mandatory Disclosure Orders as well as Mr. Carter's numerous discovery requests over a two-year period. Mr. Carter's Motion in Limine should have been granted under these circumstances. This objection is sustained. Ms. Carter shall be solely responsible for the debt set forth in the Magistrate's Decision at 15(c) and shall hold Husband harmless thereon.

{¶8}   Shirdette argues that Timothy waived any objection to the admission of the credit card exhibits when he answered "no" to the magistrate's question of whether he objected to the identified exhibits, including Exhibit P. Shirdette acknowledges, however, that Timothy did object multiple times at trial when the disputed credit card bills were discussed. Shirdette does not advance any other argument as to why the trial court should not have granted Timothy's objection.

{¶9}   We hold that Timothy objected appropriately at trial to the introduction of the disputed credit card bills. By the time the magistrate was reviewing the exhibits,

the magistrate had already ruled against Timothy as to the admissibility of the bills. Exhibit P contained the disputed bills and other undisputed bills. Under these circumstances, Timothy did not need to object again to preserve his evidentiary objection for review by the trial court. We overrule Shirdette's first assignment of error.

## II. Second Assignment of Error

{¶10}  In her second assignment of error, Shirdette argues that the trial court erred by allocating approximately $32,000 of marital credit card debt to her. Shirdette claims that allocating this debt to her is the equivalent of a distributive award to Timothy, and the court did not consider the factors required under R.C. 3105.171(F) before making such an award.

{¶11}  Timothy argues in response that while he does not agree that the credit card debt was marital debt, it was equitable under R.C. 3105.171 for the court to allocate responsibility for the debt entirely to Shirdette because she failed to timely disclose it.

{¶12}  When the court identifies marital and separate property during divorce proceedings, part of the property to be identified includes the marital debts. *Sangeri v. Yerra*, 10th Dist. Franklin No. 19AP-675, 2020-Ohio-5520, ¶ 48. Marital debt is "any debt incurred during the marriage for the joint benefit of the parties or for a valid marital purpose." *Id.* Once the court has classified the debts as marital or separate, it must "determine the amount of the debts, and consider the debts in dividing the marital and separate property equitably between the spouses pursuant to R.C. 3105.171." *Matheson v. Matheson*, 9th Dist. Lorain No. 22CA011881, 2023-Ohio-1709, ¶ 6, quoting *Habtemariam v. Worku*, 10th Dist. Franklin No. 19AP-47,

2020-Ohio-3044, ¶ 58. If the court cannot divide the spouses' property equitably solely from marital property, "[t]he court may make a distributive award to facilitate, effectuate, or supplement a division of marital property." R.C. 3105.171(E)(1). A "distributive award" refers to "any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support." R.C. 3105.171(A)(1).

{¶13} We review the trial court's equitable division of property, including debts, for an abuse of discretion. *Banks v. Banks*, 1st Dist. Hamilton No. C-230006, 2023-Ohio-3229, ¶ 5, citing *Boolchand v. Boolchand*, 1st Dist. Hamilton Nos. C-200111 and C-200120, 2020-Ohio-6951, ¶ 9. "An abuse of discretion connotes more than a mere error of judgment; rather, 'it implies that the court's attitude is arbitrary, unreasonable, or unconscionable.'" *Hayes v. Durrani*, 1st Dist. Hamilton No. C-190617, 2021-Ohio-725, ¶ 8, quoting *Boolchand* at ¶ 9. An abuse of discretion occurs when "a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

{¶14} In this case, the trial court ruled that the magistrate should have sustained Timothy's objection to the introduction of the disputed credit card bills. The court then found that Shirdette "ignored the Court's Mandatory Disclosure Orders as well as [Timothy]'s numerous discovery requests over a two-year period and did not disclose this substantial debt." It then ordered that Shirdette "shall be solely responsible for the debt * * * and shall hold [Timothy] harmless thereon." In reaching this decision, the trial court considered the evidence of the debt, despite its ruling that

the magistrate should have excluded that evidence.

{¶15} Although Timothy contests the classification of the disputed credit card debt as marital debt, he does not advance an argument as to why the debt should have been classified as Shirdette's separate debt. We therefore assume, without deciding, that the disputed credit card debt was properly identified as marital debt. We consider only whether the trial court erred in ordering that Shirdette shall be solely responsible for the debt.

{¶16} The property-division statute, R.C. 3105.171, empowers the court to "require each spouse to disclose in a full and complete manner all marital property, separate property, and other assets, debts, income, and expenses of the spouse." R.C. 3105.171(E)(3). The statute also provides a mechanism for the court to sanction a spouse for failure to comply with the court's disclosure orders. Under R.C. 3105.171(E)(5):

> If a spouse has substantially and willfully failed to disclose marital property, separate property, or other assets, debts, income, or expenses as required under division (E)(3) of this section, the court may compensate the offended spouse with a distributive award or with a greater award of marital property not to exceed three times the value of the marital property, separate property, or other assets, debts, income, or expenses that are not disclosed by the other spouse.

{¶17} Although the trial court did not expressly state that it was invoking R.C. 3105.171(E)(5), it is clear that the court made the required finding that Shirdette had substantially and willfully failed to disclose the debt as required. Because division (E)(5) permits the court to make either a distributive award of separate property or an

award of martial property as a sanction for a spouse's failure to disclose property, the court was within its discretionary power to award the debt to Shirdette as a sanction for her failure to comply with the court's discovery orders.

{¶18} Based on the evidence in the record supporting the trial court's finding that Shirdette failed to comply with the court's discovery orders, the trial court did not abuse its discretion in allocating this debt to Shirdette. We overrule Shirdette's second assignment of error.

### III. Third Assignment of Error

{¶19} In her third assignment of error, Shirdette argues that the trial court erred in declaring that a 2012 Kia Optima automobile was not marital property, but rather was "acquired during the marriage in Husband's name but for the benefit of his adult daughter." Factual questions relating to the classification and valuation of property are reviewed for either the sufficiency of the evidence or the weight of the evidence, depending on the nature of the challenge. *McKenna v. McKenna*, 1st Dist. Hamilton No. C-180475, 2019-Ohio-3807, ¶ 9-10. In the case at bar, Shirdette challenges the manifest weight of the evidence.

{¶20} "In reviewing a weight of the evidence challenge, we weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *McKenna* at ¶ 10, quoting *In re A.B.*, 1st Dist. Hamilton Nos. C-150307 and C-150310, 2015-Ohio-3247, ¶ 16. However, we review the trial court's application of the law de novo. *Hoy v. Hoy*, 4th Dist. Vinton No. 19CA717, 2021-Ohio-2074, ¶ 20.

{¶21}  At the time of the couple's separation, Timothy had a 2012 Kia Optima titled in his name. During the pendency of the divorce proceedings, the Kia was in an accident and declared a total loss. Timothy testified that the car was titled in his name to take advantage of his creditworthiness, but that the car was actually purchased by Tanyia, his adult daughter from a previous relationship. Timothy also testified that he did not make any payments toward the car and that the insurance payout after the car was totaled was used to pay off the loan. According to his testimony and bank records produced at trial, Timothy did not receive any of the funds from the insurance payment.

{¶22}  Timothy's testimony as to the source of funds for the purchase of the Kia was uncontroverted. Shirdette points to the insurance check made out to Timothy in support of her claim that the Kia was marital property, but Shirdette could not identify any bank records that show the deposit of that check into any account to which Timothy had access.

{¶23}  The trial court held that Timothy "made no payments on the automobile nor shared in any proceeds from insurance when the vehicle was in an accident and declared a total loss."

{¶24}  Shirdette emphasizes that the statutory definition of marital property under R.C. 3105.171(A)(3) supports her claim that the Kia is marital property. Under the statute, "marital property" is defined as all of the following, except for separate property:

> (i) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the

spouses during the marriage;

(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;

(iv) A participant account, as defined in section 148.01 of the Revised Code * * *.

R.C. 3105.171(A)(3)(a).

**{¶25}** The crux of Shirdette's argument is that the Kia was acquired by Timothy during the marriage, the Kia was titled in Timothy's name, and no category of separate property applies to it. Timothy's argument is that the Kia was not marital property because it was titled in his name as a way of assisting Tanyia to purchase it for her sole use. No marital funds were expended to purchase the Kia, nor were any of the insurance proceeds received as marital funds.

**{¶26}** The facts of this case are analogous to the circumstances discussed by the bankruptcy court in *In re Groves*, Bankr.N.D.Ohio No. 05-76317, 2006 Bankr. LEXIS 4376, 10-11 (Apr. 13, 2006). In that case, the court denied a motion for turnover of an automobile that was titled in the name of the debtor after finding that the debtor had the vehicle titled in his name "solely as an accommodation" to his son, it was purchased with funds provided by the son, and it was intended solely for the son's

11

"benefit and use." *Id.* at 10. Under those circumstances, the court found that, although the debtor held legal title to the vehicle, equitable title was held by the son by way of an express trust that the parties expressed through the purchase arrangement. *Id.* at 10-11.

{¶27} These circumstances are similar. Timothy allowed the Kia to be titled in his name as an accommodation to his daughter Tanyia, Tanyia provided the funds for the Kia's purchase, and the Kia was intended for Tanyia's sole use and benefit. Although the trial court did not specifically find that Timothy held title in trust for Tanyia, the court's conclusion is consistent with this analysis: Timothy held bare legal title to the Kia, and Tanyia was the beneficial owner. *See id.* at 10-11. *See also Roush v. Roush*, 2017-Ohio-840, 85 N.E.3d 1268, ¶ 20-21 (10th Dist.) (holding that, where the evidence showed that two savings accounts were used for the exclusive benefit of the parties' children, those accounts were not marital assets).

{¶28} The trial court did not lose its way in finding, based on Timothy's uncontroverted testimony, that no marital funds had been used to purchase the vehicle and that he did not benefit from the insurance proceeds. *See McKenna*, 1st Dist. Hamilton No. C-180475, 2019-Ohio-3807, at ¶ 10. From those facts, we conclude that the Kia was not Timothy's property at all. Rather, Timothy only held title for the benefit of Tanyia. Accordingly, the trial court did not err when it determined that the Kia was not marital property. We overrule Shirdette's third assignment of error.

### IV. Fourth Assignment of Error

{¶29} In her fourth assignment of error, Shirdette argues that the trial court abused its discretion in ordering her to pay $2,085.66 per month for five years in spousal support. Shirdette bases her argument on (1) the inequity of such a large

support order while she has to bear significant debts, namely approximately $153,000 in student loan debt, and (2) that the trial court did not explain how it arrived at that amount for the monthly support payment.

{¶30} When considering an award of spousal support, the trial court must take into account the factors enumerated under R.C. 3105.18(C)(1). *Reddy v. Reddy*, 1st Dist. Hamilton Nos. C-140609 and C-140678, 2015-Ohio-3368, ¶ 23. The statute permits the court to make an award that is "appropriate and reasonable." *Id.* The trial court has "broad discretion" as to whether to award spousal support and the appropriate amount of the support. *Morrison v. Walters*, 1st Dist. Hamilton No. C-210398, 2022-Ohio-1740, ¶ 3. Accordingly, this court will not disturb the trial court's decision absent an abuse of discretion. *Id.*

{¶31} The magistrate's decision includes an analysis of each of the factors. Following his analysis, the magistrate awarded $500 per month for three years to Timothy. Timothy objected to this amount, complaining that it was too low and was not supported by the evidence in the record. Timothy also pointed out the great disparity between his and Shirdette's earning potentials, particularly in light of the college degree that Shirdette earned during the marriage and Timothy's poor health and need for retraining before finding appropriate employment.

{¶32} At the hearing on Timothy's objections, Timothy requested a minimum of $2,500 per month for five years, and preferably $3,000 per month. Timothy based this on his poor health, the length of the couple's marriage, and the disparity in their income.

{¶33} The trial court sustained Timothy's objection. The court found that there was insufficient evidence to support the magistrate's conclusion that Timothy

"can earn the same [as his previous income] in another field." The court also found that Shirdette is currently paying only $50 per month on the student loan debt allocated to her. As a result, the court ordered that Shirdette must pay spousal support to Timothy in the amount of $2,085.66 per month for five years. The trial court also reserved jurisdiction over the spousal support to ensure that it could modify the amount or duration, if needed, and required disclosure of tax returns between the parties to ensure that they could audit for a change in circumstances.

{¶34} "A trial court must indicate the basis for its spousal support award in sufficient detail to enable a reviewing court to determine the trial court considered the statutory factors and that the award is fair, equitable and in accordance with the law." *Rigby v. Rigby*, 12th Dist. Brown No. CA2020-07-005, 2021-Ohio-271, ¶ 28, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 93, 518 N.E.2d 1197 (1988), paragraph two of the syllabus, *superseded by statute on other grounds as stated in Organ v. Organ*, 2014-Ohio-3474, 17 N.E.3d 1192, ¶ 13 (9th Dist.). "A mere recitation of evidence provides an insufficient basis for an appellate court to review the appropriateness of the award." *Id.* at ¶ 32, citing *Zollar v. Zollar*, 12th Dist. Butler No. CA2008-03-065, 2009-Ohio-1008, ¶ 44.

{¶35} Although the magistrate's decision includes an analysis of all of the statutory factors, and the trial court's order incorporates the magistrate's decision by reference, the trial court gave no explanation as to why it rejected the magistrate's spousal-support award or how it arrived at the figure of $2,085.66 per month for five years. Also, no basis for that figure is apparent in the record. *See Speigel v. Ianni*, 1st Dist. Hamilton Nos. C-220467, C-230012, and C-230036, 2023-Ohio-3809, ¶ 60 ("[B]ased on the exhibits provided to and referenced by the trial court, we are able to

review the trial court's award of [attorney] fees and determine what the fees were based on.").

**{¶36}** Because it appears that the trial court determined the amount of the award without any basis evident in the record, we hold that the trial court abused its discretion in making this award. We therefore sustain Shirdette's fourth assignment of error and remand the cause to the trial court to indicate the basis for its spousal-support award, in accordance with the applicable law.

### V. Fifth Assignment of Error

**{¶37}** In her fifth assignment of error, Shirdette argues that the trial court abused its discretion by not requiring Timothy to reimburse her for $3,737.80 in payments she made for Timothy's life insurance policy. Shirdette had been required under the court's "Administrative Temporary Restraining Order" to maintain the policy and continue to make payments during the pendency of the divorce proceedings. Shirdette argues that it was inequitable for the trial court to require her to pay for the postseparation insurance premiums.

**{¶38}** The parties' stipulations note that there was no cash value to the life insurance policy. The stipulations also state that Timothy "shall retain ownership" of the policy. At the objections hearing, Timothy testified that Shirdette was the beneficiary of the policy. However, during the trial before the magistrate, Shirdette testified that Timothy's sister was the beneficiary. Timothy claims that as soon as control over the policy was transferred to him, he terminated it because he was unable to afford the payments.

**{¶39}** The magistrate ordered Timothy to reimburse Shirdette for her postseparation payments towards his life insurance premiums.

{¶40} Timothy filed an objection on the basis that Shirdette never requested relief from the court from the obligation to continue payments for the life insurance policy, or requested permission from the court to terminate the policy, like she did with Timothy's health insurance. Shirdette argued that it was inequitable to require her to bear the postseparation cost of an insurance policy that benefited Timothy and provided no benefit to her.

{¶41} The trial court sustained Timothy's objection on the basis that Shirdette never requested relief from the court's order to maintain the policy during the pendency of the divorce proceedings. The court found that it would be inequitable to require Timothy to bear the cost without notice that it would be his responsibility.

{¶42} Shirdette continued to make the policy payments during the pendency of the divorce proceedings without objection. As soon as Timothy was required to make the payments, he canceled the policy because he could not afford it. We hold that the trial court's rationale in balancing the equities of this situation was not "arbitrary, unreasonable, or unconscionable." *See Hayes*, 1st Dist. Hamilton No. C-190617, 2021-Ohio-725, at ¶ 8. Accordingly, the trial court did not abuse its discretion in reaching this conclusion. We overrule Shirdette's fifth assignment of error.

## VI. Sixth Assignment of Error

{¶43} In her final assignment of error, Shirdette argues that the trial court erred by requiring her to provide Timothy with proof of payments of their child's private school tuition for the 2022-2023 school year by June 1, 2023. Shirdette argues that she could not comply with this deadline because the divorce decree was not docketed until Friday, May 26, 2023, and because of the Memorial Day holiday the following Monday, the decree was not mailed to the parties until May 30. Shirdette

argues that it was an abuse of discretion for the trial court to give her one day to comply with its order.

{¶44} The consequence of Shirdette's failure, as argued by Timothy's counsel at oral argument, is that by failing to provide proof of payments by the June 1 deadline, Shirdette has forfeited the right to recover from Timothy the one-half share of the tuition payments that the court ordered Timothy to pay. In response to Shirdette's argument on appeal, Timothy argues that Shirdette had been on notice that such an order was likely when the trial court entered its rulings on Timothy's objections in February 2023. Accordingly, it should not have been impossible for Shirdette to comply with such a short deadline.

{¶45} Under these circumstances, and in the interest of fairness, we agree with Shirdette. The trial court erred by setting such a short deadline for compliance with its order. We sustain Shirdette's sixth assignment of error and remand this cause to the trial court to set a reasonable deadline for Shirdette to provide documentation of the school expenses so that she may be reimbursed by Timothy in accordance with the divorce decree.

### VII. Conclusion

{¶46} For the foregoing reasons, we reverse the trial court's orders as to the amount and duration of spousal support and as to the deadlines for compliance pertaining to the division of school expenses. We affirm the trial court's judgment in all other respects. We remand the cause for further proceedings consistent with this opinion and the law.

Judgment accordingly.

**BERGERON, P.J.,** and **WINKLER, J.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.